USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/14/2020___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MASON TENDERS DISTRICT COUNCIL WELFARE FUND; MASON TENDERS DISTRICT COUNCIL PENSION FUND; MASON TENDERS DISTRICT COUNCIL ANNUITY FUND; MASON TENDERS DISTRICT COUNCIL TRAINING FUND; MASON TENDERS DISTRICT COUNCIL HEALTH AND SAFETY FUND; and DOMINICK GIAMMONA, as FUNDS' CONTRIBUTIONS/DEFICIENCY MANAGER,

Plaintiffs,

-against-

GIBRALTAR CONTRACTING, INC.; and CHRISTIAN VARELA, in his Personal Capacity,

Defendants.

18 Civ. 3668 (AT)

**AMENDED ORDER**[1]

ANALISA TORRES, District Judge:

Plaintiffs, Mason Tenders District Council Welfare Fund, Mason Tenders District Council Pension Fund, Mason Tenders District Council Annuity Fund, Mason Tenders District Council Training Fund, Mason Tenders District Council Health and Safety Fund (the "Funds"), and Dominick Giammona, in his fiduciary capacity as the Funds' contributions and deficiency manager, bring this action pursuant to, *inter alia*, the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and the Taft-Hartley Act, 29 U.S.C. § 185. Plaintiffs allege that Defendants, Gibraltar Contracting, Inc. ("Gibraltar") and Christian Varela, breached the parties' collective bargaining agreement (the "Agreement") by, among other things, failing to pay the full amounts due to the Funds. Plaintiffs move for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking damages as well as injunctive and other equitable relief under ERISA and the Agreement. ECF No. 55. For the reasons stated below, Plaintiffs' motion is GRANTED.

---

[1] This order amends the Court's previous order entered on January 6, 2020, ECF No. 64, and modifies only the "conclusion" section of the January 6, 2020 order for clarity. *See infra* at 10–11.

## BACKGROUND[2]

The facts discussed in this opinion are undisputed except where otherwise noted. The Court has drawn all reasonable inferences in favor of Defendants, as the nonmovants. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

The Funds are jointly administered, multi-employer, labor management trust funds established and maintained pursuant to various collective bargaining agreements and trust agreements in accordance with Sections 302(c)(5) and (c)(6) of the Taft-Hartley Act, 29 U.S.C. §§ 186(c)(5) and (c)(6). Pl. 56.1 ¶ 1, ECF No. 60-1. The Funds provide fringe benefits to eligible employees on whose behalf employers in the construction industry contribute to the Funds pursuant to collective bargaining agreements with the Mason Tenders District Council of Greater New York ("Union") to which such employers are bound. *Id.* ¶ 3. Plaintiff Mason Tenders District Council Welfare Fund is also the duly authorized collection agent for the Union and the Mason Tenders District Council Political Action Committee ("PAC"). *Id.* ¶ 5.

At all times relevant to the action, Gibraltar, the employer, was a party to the Agreement with the Union. *Id.* ¶¶ 9–12.[3] The Agreement requires that Gibraltar make fringe benefit contributions to the Funds for every hour of "covered work"—that is, work performed by its employees within the trade and geographic jurisdiction of the Agreement. *Id.* ¶ 16. The Agreement also requires Gibraltar to deduct and remit dues checkoffs and PAC contributions from the wages of all authorized employees performing covered work. *Id.* ¶ 17.

---

[2] The following facts are drawn from the parties' pleadings and submissions, including the complaint, Plaintiffs' original and supplemental Rule 56.1 statements of undisputed facts, and declarations. Citations to a paragraph in Plaintiffs' Rule 56.1 statements also include Defendants' response.

[3] The Agreement was signed by Varela once in his corporate capacity on behalf of Gibraltar, and once in his personal capacity. *Id.* ¶ 13. Varela and the Union have also entered into a side letter confirming personal liability. *Id.* ¶¶ 15–17.

Gibraltar paid to the Funds at least $931,468.30 in fringe benefit contributions from May 27, 2015 through December 27, 2016. *Id.* ¶ 41.

The Agreement requires Gibraltar to permit the Funds or their designated representatives to inspect and audit Gibraltar's books and records to confirm payment of all contributions owed. *Id.* ¶ 18. Pursuant to a 2017 engagement letter, the Funds directed Schultheis & Panettieri, LLP ("S&P") to inspect Gibraltar's books and records for the period of May 27, 2015 through December 27, 2016, and to identify whether Gibraltar had made all contributions to the Funds required under the Agreement, and to issue reports of any findings. Pl. Supp. 56.1 ¶ 4, ECF No. 54.[4]

As part of the audit, S&P requested access to documents Gibraltar is required to maintain and provide the Funds and their representatives access to pursuant to the Agreement and the Funds' trust agreements, including to payroll records, certified payroll records, time sheets, job contracts, bank statements and cancelled checks, and payroll reports to all benefit funds. *Id.* ¶ 13. Because Gibraltar did not provide full documentation showing the scope of work performed by several of its employees, S&P requested additional documents. *Id.* ¶¶ 15–16.

S&P completed review of Gibraltar's books and records on September 1, 2017, *id.* ¶ 22, and sent preliminary findings of the audit to Gibraltar by letter dated October 26, 2017, *id.* ¶ 24. Gibraltar neither responded to nor provided documentation disputing the preliminary findings. *Id.* ¶ 27. The audit was submitted to the Funds on December 6, 2017. *Id.* ¶ 28.

The Independent Accountants' Report on Applying Agreed-Upon Procedures, dated November 29, 2017 (the "11/29/17 Report"), describes the procedures performed and the

---

[4] This audit, as with subsequent audits discussed herein, was conducted pursuant to agreed-upon procedures set forth in the engagement letter, which were in accordance with the attestation standards established by the American Institute of Certified Public Accountants ("AICPA"). Pl. Supp. 56.1 ¶¶ 3, 30, 39, 56, 76.

findings. *Id.* ¶ 29. The 11/29/17 Report found that Gibraltar failed to make fringe benefit contributions, and remit dues checkoffs, and PAC contributions in the principal amount of $1,894,698.89. *Id.* ¶ 31. The 11/29/17 Report also found Gibraltar to be substantially delinquent and that Gibraltar owed the Funds $235,290.36 in imputed audit costs. *Id.* ¶ 32. Gibraltar disputed the 11/27/17 Report and provided the Funds with additional documentation. *Id.* ¶¶ 33, 35. S&P issued a revised report on April 11, 2018 (the "4/11/18 Report"), which found that Gibraltar failed to make fringe benefit contributions, and remit dues checkoffs, and PAC contributions in the principal amount of $1,630,003.71. *Id.* ¶ 37. The 4/11/18 Report also found that Gibraltar owed the Funds imputed audit costs in the amount of $202,415.76. *Id.* ¶ 38.

On April 26, 2018, Plaintiffs commenced this action against Defendants for delinquent fringe benefit contributions, dues checkoffs, and PAC contributions pursuant to the 4/11/18 Report. ECF No. 7. Based on documents received in discovery, S&P further adjusted the audit results. Pl. Supp. 56.1 ¶¶ 53–54. On December 12, 2018, S&P issued a revised report which stated that Gibraltar failed to pay fringe benefit contributions (the "12/12/18 Report"), and remit dues checkoffs and PAC contributions in the principal amount of $1,239,273.69. *Id.* ¶ 54. The 12/12/18 Report also found that Gibraltar owed the Funds imputed audit costs in the amount of $153,862.12. *Id.* ¶ 55.

Following additional discovery, S&P issued yet another revised report on April 2, 2019 ("4/2/19 Report"), which found that Gibraltar failed to pay $566,555.67 in fringe benefit contributions, dues checkoffs, and PAC contributions. *Id.* ¶ 74. The 4/2/19 Report found that Gibraltar owed the Funds imputed audit costs in the amount of $70,292.87. *Id.* ¶ 75.

On April 17, 2019, the parties entered into a stipulation in which Defendants admitted, *inter alia*, that they are jointly and severally liable to the Funds for the 4/2/19 Report findings,

including the dates, individuals, and hours for which contributions are due, and that they owe $527,196.43 in principal fringe benefit contributions, and $39,359.13 in principal dues checkoffs, and PAC contributions to the Funds for a total delinquency of $566,555.67 for the audit period. Pl. 56.1 ¶¶ 19–22. In subsequent submissions, Defendants affirmed their liability to the Funds in the amount of $566,555.67, and that they are liable to the Funds for all contractual and statutory damages including interest, liquidated damages, and attorney's fees and costs. *Id.* ¶¶ 25, 28–39, 44–45, 48–49; Def. Opp. at 1–2, ECF No. 62. Defendants further admit that Gibraltar is "substantially delinquent" in its payment of fringe benefit contributions, as the term is defined in the Agreement. Pl. 56.1 ¶ 42.

Article VI § 17(f) of the Agreement provides that if an audit determines an employer to be delinquent in the payment of fringe benefit contributions to the Funds, an employer shall also pay interest on the unpaid amounts from the date due until the date of judgment at the rate prescribed under 26 U.S.C. § 6621, as well as reasonable costs and attorney's fees incurred. *Id.* ¶ 26.

Additionally, the Agreement sets forth the Fund's entitlement to certain relief upon an entry judgment for the Fund by a court of competent jurisdiction, including the unpaid contributions, interest on unpaid contributions, reasonable attorney's fees and costs, and other legal or equitable relief as deemed appropriate by the court. *Id.* ¶ 27. The Agreement also sets forth a formula to calculate the imputed audit costs owed by an employer who is found to be "substantially delinquent" after an audit. *Id.* ¶ 40.

## DISCUSSION

I. <u>Legal Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine

dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a genuine dispute of material fact by citing particular evidence in the record. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary-judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105. In deciding the motion, the Court views the record in the light most favorable to the nonmoving party. *Koch*, 287 F.3d at 165.

II. Analysis

A. Defendants' Liability for the 4/2/19 Report Findings

Liability is not contested in this case. Defendants admit that they are liable for

> principal fringe benefit contributions in the amount of $527,196.41 and $39,359.13 for dues checkoffs and [PAC] contributions, together totaling $566,555.54, for the audit period of May 27, 2015 to December 31, 2016. Additionally, [D]efendants do not contest that they are liable for contractual and statutory interest and penalties based upon the amounts found to be owing to [P]laintiffs.

ECF No. 60-2; *see also* Def. Opp. at 1 (confirming that Defendants admit liability).

6

Plaintiffs' motion for summary judgment on the foregoing is, additionally, amply supported by the record. *See generally* Pl. 56.1, Pl. Supp. 56.1.[5]

Accordingly, Plaintiffs' motion for summary judgment on their claims that Defendants are liable for delinquent contributions in the principal amount of $527,196.41 and for dues checkoffs and PAC contributions in the amount of $39,359.13 for the audit period of May 27, 2015 to December 31, 2016 is GRANTED.

      B. Defendants' Liability for Damages and Audit Costs

Under the parties' Agreement and ERISA, the Court must award interest, liquidated damages, and reasonable attorney's fees and costs upon a granting of judgment in favor of the Fund. *See* 29 U.S.C. § 1132(g)(2); Pl. 56.1 ¶ 27; *see also* M*ason Tenders Dist. Council v. Aurash Const. Corp.*, No. 04 Civ. 2427, 2006 WL 647884, at *2 (S.D.N.Y. Mar. 15, 2006) (holding that award of interest, penalties, and attorney's fees and costs under ERISA, 29 U.S.C. § 1132(g)(2), is mandatory). Defendants admit that they are jointly and severally liable to the Funds for all accrued interest, liquidated damages, and reasonable attorneys' fees and costs. Pl. 56.1 ¶¶ 28–38, 44–45. The parties' only disagreement is whether Plaintiffs should be awarded the full amount of imputed audit costs. Def. Opp. at 1.

Defendants argue that Plaintiffs' request for audit costs is inadequately supported, and that the difference between the amounts Plaintiffs claimed Defendants owed at the start of the auditing process, compared to the final amount agreed to be due, "places the efficacy of the

---

[5] Even without Defendants' admission of liability, the 4/2/19 Report would be sufficient to find that there are no material facts in dispute and that contributions are due. *See, e.g.*, *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, No. 14 Civ. 6016, 2019 WL 95562, at *12 (S.D.N.Y. Jan. 3, 2019) (holding that audit report was reliable in granting summary judgment to plaintiffs where defendants never made specific objections to audit findings and admitted that the employees performed covered work); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D v. Eastport Excavation & Utils. Inc.*, 3 F. Supp. 3d 204, 216 (S.D.N.Y. 2014) ("[C]ase law holds that a court may rely on an audit or an auditor's report to prove that defendant employers did not make required contributions to funds.") (internal quotation marks and citation omitted).

7

'audit' in question," and counsels against an award of imputed audit costs. Def. Opp. at 2. Neither argument has merit.

First, Defendants do not dispute that both ERISA and contractual provisions, such as the parties' Agreement, may serve as a basis for an award of audit fees. *Id.* (citing *Virga v. Big Apple Const. & Restoration Inc.*, 590 F. Supp. 2d 467, 476 (S.D.N.Y. 2008) (collecting cases)); *see also* 29 U.S.C. § 1132(g)(2) (authorizing a court to grant "such other legal or equitable relief as the court deems appropriate"). Plaintiffs assert that the Agreement expressly entitles them to imputed audit costs as calculated according to the formula in the Agreement, Pl. Reply at 2, ECF No. 63 (citing Pl. Supp. 56.1 ¶¶ 32, 38, 55, 75, 107), which Defendants do not dispute. *See generally* Def. Opp.[6] "Given such authority, courts have awarded imputed audit costs as a matter of course." *Mason Tenders Dist. Council Welfare Fund v. Kafka Constr., Inc.*, No. 16 Civ. 9911, 2018 WL 2138621, at *6 (S.D.N.Y. May 9, 2018) (collecting cases).

Second, the difference between the amount Plaintiffs initially demanded based on the initial audits and the amount finally agreed upon based on the final audit, does not, as Defendants contend, call into question the efficacy of the audit or warrant a reduction of the audit costs. *See* Def. Opp. at 2. For one, the revisions to the audits were the result of Defendants' additional disclosure of documents and information, *see* Pl. Supp. 56.1 ¶¶ 15–16, 33, 35, 53–54, 74, and not due to any apparent flaw of the audit process, *see id.* ¶¶ 3, 30, 39, 56, 76 (audits were conducted pursuant to agreed-upon procedures set forth in the parties' engagement letter, which were in accordance with the attestation standards established by the AICPA). Additionally, the cases Defendants rely on to support their contention that audit costs should be evaluated for

---

[6] Because Defendants fail to dispute any of the facts in Plaintiffs' supplemental Rule 56.1 statement, the Court deems those facts, including those relating to imputed audit costs, as admitted. *See* Local Civ. R. 56.1(c); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

reasonableness are inapposite, as they concern actual, not imputed, audit costs. *See* Def. Opp. at 2 (citing *Cruz v. U.S. Health Clean*, No. 07 Civ. 6392, 2009 WL 1562749, at *7 (S.D.N.Y. May 29, 2009), *report and recommendation adopted in part sub nom. Cruz v. US Health Clean*, No. 07 Civ. 6392, 2010 WL 605583 (S.D.N.Y. Feb. 19, 2010) (assessing actual audit costs for reasonableness); *Trustees of Bricklayers & Allied Craftworkers Local 5 New York Retirement v. Helmer-Cronin Const., Inc.*, No. 03 Civ. 0748, 2005 WL 3789085, at *8 (S.D.N.Y. Oct. 24, 2005) (same)).

Here, however, Plaintiffs argue that they are owed imputed audit costs as calculated by the formula contained in the Agreement. Pl. 56.1 ¶ 40. Courts in this district have regularly awarded imputed audit costs based on similar formulas contained in collective bargaining agreements, regardless of the number of audit revisions. *E.g.*, *Kafka Constr., Inc.*, 2018 WL 2138621, at *6 (awarding imputed audit costs based on the formula in the collective bargaining agreement for an audit that was revised three times); *Mason Tenders Dist. Council Welfare Fund v. ZHN Contr. Corp.*, 2005 U.S. Dist. LEXIS 45645, *34 (S.D.N.Y. Dec. 5, 2005) (same). The Court, therefore, grants the imputed audit costs without adjustment.

Accordingly, Plaintiffs' motion for summary judgment on their claims for damages is GRANTED.

Specifically, Plaintiffs are entitled to:

- Interest in the amount of $82,409.97, plus additional interest accrued from June 27, 2019 until the entry of judgment, 26 U.S.C. § 6621; Pl. Supp. 56.1 ¶ 102;
- Liquidated damages in the amounts of $82,409.97, plus the additional interest accrued from June 27, 2019 until the entry of judgment, 29 U.S.C. § 1132(g)(2)(C); Pl. Supp. 56.1 ¶ 103;
- Imputed audit costs in the amount of $70,292.87, Pl. Supp. 56.1 ¶ 75; and
- Interest on the unpaid dues checkoffs and PAC contributions from May 27, 2015 through June 26, 2019 in the amount of $11,597.57; Pl. Supp. 56.1 ¶ 105.

C. Plaintiffs' Entitlement to Audit Gibraltar's Records

Defendants admit Plaintiffs' entitlement under the Agreement and ERISA to an audit of Gibraltar's books and records for the period of December 28, 2016 to the present. Def. Opp. at 3; *see also* Pl. 56.1 ¶ 46; 29 U.S.C. §§ 1059(a), 1132(g)(2)(E).

Accordingly, Plaintiffs' motion for summary judgment on their claim for an audit is GRANTED.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment is GRANTED as follows:

1. Plaintiffs' motion for summary judgment on their claims that Defendants are liable for delinquent contributions in the principal amount of $527,196.41 and for dues checkoffs and PAC contributions in the amount of $39,359.13 for the audit period of May 27, 2015 to December 31, 2016 is GRANTED.

2. Plaintiffs' motion for summary judgment on their claims for damages is GRANTED, and the Court awards Plaintiffs:

    a. Interest in the amount of $82,409.97, plus additional interest accrued from June 27, 2019 until January 8, 2020;

    b. Liquidated damages in the amounts of $82,409.97, plus the additional interest accrued from June 27, 2019 until January 8, 2020;

    c. Imputed audit costs in the amount of $70,292.87; and

    d. Interest on the unpaid dues checkoffs and PAC contributions from May 27, 2015 through June 26, 2019 in the amount of $11,597.57.

3. Plaintiffs' motion for summary judgment on their claim for an audit is GRANTED.

4. By **January 31, 2020**, Plaintiffs shall file their motion for attorney's fees. *See* ECF No. 51.

SO ORDERED.

Dated: January 14, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge